UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HEAD,

       Plaintiff,                           **DECISION AND ORDER**

      -v-                                         6:14-CV-06546 EAW

SERGEANT MARTIN EBERT, *et al.*,

       Defendants.
_____

## INTRODUCTION

Plaintiff Michael Head ("Plaintiff" or "Head"), a former inmate of Attica Correctional Facility ("Attica"), commenced this lawsuit on September 18, 2014, asserting various 42 U.S.C. § 1983 claims relating to a physical altercation with several correction officers at Attica on January 22, 2014 (the "Altercation"). (*See* Dkt. 1). After two 28 U.S.C. § 1915 screenings and a summary judgment motion (*see* Dkt. 7; Dkt. 15; Dkt. 138), Head's remaining causes of action include excessive force claims against Attica officials Sergeant Martin Ebert ("Ebert"), C.O. Andrew Dannheim ("Dannheim"), C.O. James Pichette ("Pichette"), C.O. Joseph Kapelke ("Kapelke"), C.O. Paul Weaver ("Weaver"), and C.O. Lloyd Nolan ("Nolan") (collectively, "Defendants") based on their alleged use of force on Head during and after a search of his cell. (*See generally* Dkt. 138). Defendants have also asserted counterclaims against Head based on his alleged actions during the Altercation. (*See* Dkt. 139).

Defendants have now moved for summary judgment on 1) all claims against Ebert, 2) all claims against Dannheim, 3) all counterclaims against Head, and 4) the issues of fact that Head did not use self-defense, that Head initiated the Altercation, and that the search of Head's cell was lawful. (*See* Dkt. 172).[1] For the reasons discussed below, Defendants' summary judgment motion is denied.

## BACKGROUND

Head was an inmate at Attica at all times relevant to these claims. (*See* Dkt. 175-10 at ¶ 1). On January 22, 2014, Pichette and Kapelke arrived at Head's cell and asked him to step out. (*Id.*). Defendants claim that they were there to conduct a search of Head's cell. (Dkt. 172-1 at ¶ 1). Head alleges that the cell search was merely a pretext for the officers to harass him. (Dkt. 175-10 at ¶ 3). After Head refused to step out of the cell, (*id.* at ¶ 2), the Altercation began, the details of which are contested.

Defendants allege that Head attacked both officers, stabbing Pichette with a pen multiple times. (Dkt. 172-1 at ¶ 3). After an ensuing struggle and call for help, Weaver and Nolan entered the cell and all four officers began striking Head, after which they eventually were able to restrain him. (*Id.* ¶¶ 4-6). Head, on the other hand, alleges that he "fought with" Pichette after he entered the cell "using a pen," immediately after which Weaver and Nolan entered the cell as if they were anticipating a physical struggle. (Dkt. 175-10 at ¶¶ 3-5).

---

[1] Head initially cross-moved for leave to amend his answer to Defendants' counterclaims and for summary judgment against Defendants' counterclaims (*see* Dkt. 175), but has since withdrawn the motions (*see* Dkt. 177).

Head did not see Ebert during the fighting, and claims he was unable to specifically identify several other prison officials involved in the Altercation and its aftermath at the time it was happening. (*Id*. at ¶ 9). Head learned of Ebert's involvement through Ebert's statements during disciplinary proceedings relating to the Altercation. (*Id*.). Head was also initially unable to name the specific officer who allegedly kicked him in the face after he was already restrained, but was able to identify him as Dannheim after describing him to other inmates and recognizing him while still at Attica. (*Id*. at ¶¶ 13-17).

At a subsequent misbehavior hearing for Head's conduct during the Altercation, Head pled guilty to one count of violent conduct and one count of disobeying a direct order. (*Id*. at ¶ 8). Head was also found guilty of one count of possessing a weapon and one count of assault on staff. (*Id*.). The hearing packet containing Head's charges and the hearing officer's findings do not state what specific conduct constituted these offenses. (*See generally* Dkt. 172-3 at 4-28). Head was criminally charged and convicted of two counts of assault in the second degree for attacking Pichette during the Altercation. (*Id*. at ¶ 10).

Head commenced the instant action on September 18, 2014. (Dkt. 1). After several screening orders and motions, Head's second amended complaint is now the operative pleading. (Dkt. 98). On August 15, 2023, Defendants moved for summary judgment. (Dkt. 172). Head filed his opposition and a cross-motion for partial summary judgment on Defendants' counterclaims on September 29, 2023. (Dkt. 175). Defendants filed their reply on October 13, 2023. (Dkt. 176). On October 20, 2023, Head withdrew his cross-motion. (Dkt. 177).

**DISCUSSION**

I. **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts[] and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654

F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.     Claims Against Ebert and Dannheim

Defendants argue that Ebert and Dannheim are entitled to summary judgment because there is no evidence indicating either of them were personally involved in the Altercation with Head. (*See* Dkt. 172-4 at 6-11). However, Head has demonstrated a material dispute regarding the respective roles of Ebert and Dannheim.

"As a fundamental prerequisite '[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.'" *Keesh v. Quick*, 19-CV-08942 (PMH), 2022 WL 2160127, at *5 (S.D.N.Y. June 15, 2022) (quoting *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017)). Personal involvement in claims arising from a correction officer's use of force may be established "through facts suggesting the officer was either personally involved in the use of force or was present during the use of force and failed to intervene." *Allen v. Muratore*, 6:16-CV-6539 EAW, 2017 U.S. Dist. LEXIS 78290, at *5 (W.D.N.Y. Mar. 2, 2017) (quoting *Piper v. City of Elmira*, 12 F. Supp. 3d 577, 596 (W.D.N.Y. 2014)).

Defendants argue that Head cannot establish that Ebert was involved with or present during the Altercation because Head admitted that he never saw Ebert and only identified him because he saw his name on paperwork relating to the Altercation. (*See* Dkt. 172-4 at 6). However, this argument mischaracterizes deposition testimony. Head stated that he

- 5 -

did not see Ebert during the Altercation because he could not specifically identify him in "a sea of blue uniforms." (Dkt. 172-3 at 143). Head did not affirmatively admit that Ebert was not there. In fact, Ebert appears to have stated on multiple occasions that he was at least present during the Altercation. (*See* Dkt. 175-5 at 2 (letter from Ebert stating that he arrived at the scene of the Altercation while the other officers were defending themselves); Dkt. 175-6 at 2 (Ebert's testimony from disciplinary hearing stating same); Dkt. 175-8 at 3 (response to interrogatory eight stating Ebert was present after Head was placed in restraints)). Because Ebert's presence and purported failure to intervene on Head's behalf are sufficient to avoid summary judgment, *see Allen*, 2017 U.S. Dist. LEXIS 78290, at *5, summary judgment with respect to Head's claim against Ebert is denied.

Defendants further argue that Head has failed to establish Dannheim's personal involvement in the Altercation because there is no admissible evidence indicating Dannheim was the "John Doe" initially identified in the complaint. (*See* Dkt. 172-4 at 6-11). A failure to definitively identify a specific attacker is not necessary to establish personal involvement in a § 1983 claim. *See McGowan v. Town of Evans*, 15-CV-672-RJA-MJR, 2017 WL 5633389, at *10 (W.D.N.Y. Sept. 13, 2017) (rejecting lack of personal involvement argument based on failure to identify defendant as attacker during deposition because "[a]n arrestee's 'inability to positively identify those who allegedly violated his rights is not per se fatal to his claims'"), *adopted*, 15-CV-672-A, 2017 WL 5598855 (W.D.N.Y. Nov. 21, 2017). This failure to specifically identify an individual is more properly assessed by a jury. *See Hattar v. Carelli*, No. 09 CV 4642(VB), 2012 WL 246668, at *3 (S.D.N.Y. Jan. 11, 2012) ("Defendants argue plaintiffs' excessive force

claims are deficient because plaintiffs cannot identify any specific individual officer who used excessive force . . . . This is ultimately a credibility issue for the jury to determine and is not fatal to plaintiffs' claims."); *see also Ricks v. O'Hanlon*, No. 07 Civ. 9849(WHP), 2010 WL 245550, at *4 (S.D.N.Y. Jan. 19, 2010) (neither a "description [n]or identification from a photo array" is necessary to withstand summary judgment "as long as the plaintiff submits other competent evidence" of personal involvement).

A general physical description may be sufficient to establish a defendant's personal involvement in an incident. *See Baines v. City of New York*, 10-CV-9545 (JMF), 2017 WL 3425746, at *3 (S.D.N.Y. Aug. 9, 2017) (denying summary judgment, in part because plaintiff "did provide a physical description of the three officers involved . . . . At trial, therefore, he might very well be able to identify the involved [o]fficers."); *Tranchina v. McGrath*, 9:17-CV-1256 (MAD/ML), 2020 WL 1812684, at *6 (N.D.N.Y. Apr. 9, 2020) (denying summary judgment based on physical description of one assailant matching named defendant, despite plaintiff's inability to specifically identify assailant during attack); *see also Finley v. Perry*, No. 9:06-CV-1524 (FJS/ATB), 2010 WL 6427496, at *6 (N.D.N.Y. July 13, 2010), ("Although the plaintiff cannot identify, at least by name, which of the three defendants administered particular blows, he adequately describes the personal involvement of each officer who was admittedly involved in the incident."), *adopted*, No. 9:06-CV-1524 FJS ATB, 2011 WL 1302248 (N.D.N.Y. Mar. 31, 2011).

Here, Head was initially unable to identify the correction officer who kicked him in the head during the Altercation, (*see* Dkt. 1-2 ¶¶ 12, 16), but later amended his complaint after recognizing the correction officer and being told by other inmates that his name was

Dannheim, (*see* Dkt. 175-9 ¶¶ 6-8). Head claims that he was familiar with the officer and had seen him multiple times before and after the Altercation, but simply did not know his name when he filed this case. (*See id*. ¶¶ 4-7). While the parties dispute the admissibility of the other inmates' identification of Dannheim, (*see* Dkt. 175-1 at 16; Dkt. 176 at 5), this issue is inapposite. Head's own ability to physically describe Dannheim and specifically identify him at trial based on his recognition from past experiences with the officer is sufficient to avoid summary judgment, despite Head not knowing Dannheim's name when this case was filed. *See Tranchina*, 2020 WL 1812684, at *6; *Baines*, 2017 WL 3425746, at *3. Accordingly, summary judgment with respect to Head's claim against Dannheim is denied.

### III. Counterclaims and Findings of Fact

Defendants argue that they are entitled to summary judgment on their counterclaims because the Attica misbehavior hearing collaterally estops Head from denying certain conduct during the Altercation. (*See* Dkt. 172-4 at 3-5). Defendants also argue that the misbehavior hearing and his criminal conviction bar Head from arguing at trial that he used self-defense, that he was not the initial aggressor, and that the search of his cell was unlawful. (*See id*. at 5). For the reasons that follow, the Court concludes that the findings from the misbehavior hearing are not specific enough to have a preclusive effect here. The Court additionally concludes that the factual findings requested by Defendants do not necessarily follow from either the misbehavior hearing or his criminal conviction, and that

no further limiting instructions beyond those previously ordered by the Court are necessary.[2]

Collateral estoppel requires that the allegedly precluded issue be "necessarily decided" in the previous proceedings. *Narumanchi v. Am. Home Assur. Co.*, 317 F. App'x 56, 58 (2d Cir. 2009) (quoting *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999)). When a misbehavior hearing results in less guilty counts than there are officers involved in an incident, and the hearing officer does not specify which officers the guilty counts apply to, the court has no means of determining which issues have been necessarily decided. *See Brown v. Jones*, No. 15-CV-6108-EAW-MJP, 2021 WL 6427601, at *6 (W.D.N.Y. Oct. 15, 2021) (rejecting estoppel argument for four counterclaims where underlying misbehavior hearing only resulted in two guilty counts because the hearing results "d[id] not specify which [c]ounterclaimants the hearing officer found [p]laintiff assaulted . . . . In other words, the undersigned would be guessing if he had to choose which [c]ounterclaimants the hearing officer found [p]laintiff assaulted, which he cannot do."), *adopted*, 6:15-CV-06108-EAW-MJP, 2021 WL 5988417 (W.D.N.Y. Dec. 16, 2021).

At his misbehavior hearing, Head only pled to or was found guilty of one count each of violent conduct, assault on staff, disobeying a direct order, and possessing a weapon. (*See* Dkt. 172-3 at 5). Here, defendants Kapelke, Nolan, and Weaver all assert their own

---

[2] The Court previously held that Plaintiff would be prohibited at trial from testifying that Pichette was the initial aggressor or that Plaintiff was acting in self-defense when he attacked Pichette and that the jury would be instructed to ignore any statements by Plaintiff or any witness to the contrary and would further be instructed that Plaintiff assaulted Pichette. (Dkt. 138 at 21-22).

counterclaims. (*See* Dkt. 98). The Court cannot determine from the barely legible hearing packet which defendant the hearing officer found these counts applicable to. (*See generally* Dkt. 172-3 at 7, 8). It is also possible that these counts applied only to Pichette, whose counterclaim has already been resolved. (*See* Dkt. 138 at 25). Accordingly, granting preclusive effect to this misbehavior hearing for any specific defendant would be improperly speculative. *See Brown*, 2021 WL 6427601, at *6.

Defendants' argument that it is DOCCS policy to only charge one count of any given offense (Dkt. 176 at 1) is inapposite, as it fails to disambiguate the hearing results. Likewise, the hearing officer's reliance on evidence implicating all counterclaimants were assaulted fails to establish a preclusive effect (*id*. at 1, 2) because the hearing officer did not adopt these specific findings. Instead, he merely generally states that he relied, to an unspecified degree, on these pieces of evidence. Accordingly, summary judgment cannot be granted on these counterclaims.

For the same reasons, the Court cannot grant Defendants' proposed findings of fact regarding the Altercation. Because it is unclear from the hearing which Defendants Head attacked and when, it is not clear whether he was the initial aggressor or defended himself against any specific defendant besides Pichette. For example, Head may have been attacked without provocation by Kapelke, Nolan, or Weaver, and legitimately defended himself against them, but been the initial aggressor toward Pichette. The hearing does not bar this or any other number of possible versions of the Altercation that are consistent with Head's criminal proceedings and this Court's previous decision and order. (*See* Dkt. 138 at 16-22, 26). Likewise, nothing in the hearing packet indicates that the hearing officer

made any findings of fact regarding the legality of the cell search. (*See generally* Dkt. 172-3 at 7, 8). While Head's criminal proceedings indicate Pichette was performing a lawful duty when attacked, Defendants offer nothing dictating a finding that the lawful duty was a search of Head's cell. Accordingly, Defendants' motion is denied with respect to these findings of fact.

To the extent Defendants argue that allowing Head to dispute these issues of fact at trial would allow an improper collateral attack on his criminal conviction or misbehavior proceedings, *see Heck v. Humphrey*, 512 U.S. 477, 484 (1994), this argument fails for the same reasons as Defendants' collateral estoppel argument. Finding that Head defended himself or was not the initial aggressor against Kapelke, Nolan, or Weaver would not "necessarily imply the invalidity" of the prior proceedings because Head's criminal conviction only pertained to Pichette and the disciplinary hearing was ambiguous as to whom it applied. *Id*. at 487. Accordingly, Head may argue these points at trial without collaterally attacking any prior proceedings.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 172) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 20, 2023
      Rochester, New York